UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARRIE MEYER,

    Plaintiff,

-vs-

Case No. 06-14953
HON. AVERN COHN

MACOMB TOWNSHIP OF MACOMB
COUNTY, MICHIGAN; JOHN BRENNAN,
individually and in his capacity as Township
supervisor; and JOHN BROGOWICZ,
individually and in his capacity as Human
Resources Director, Jointly and Severally,

    Defendants.

_____/

## ORDER REGARDING ATTORNEY FEES

I.

This is an employment case. Plaintiff Carrie Meyer ("Meyer") claimed that she was sexually harassed and retaliated against during the course of her employment with defendant Macomb Township. As will be explained, Meyer's initial counsel, Jamil Akhtar ("Akhtar") withdrew. Meyer retained new counsel and the case was eventually settled for $35,000.00.[1]

Akhtar filed a motion to enforce attorney lien or in the alternative motion for quantum meruit. He says he has a valid lien for $3,045.00 in advanced costs and $48,670.00 in attorney fees (194.70 hours at a billing rate of $250.00/hour). The Court held a hearing on the motion at which it directed Meyer's current counsel, Scott Combs

---

[1] At the hearing, counsel for Meyer said the matter had been settled and the parties were still finalizing the language. The Court assumes that the settlement is now final.

("Combs") to submit a paper detailing the amount of his attorney fees. Combs' paper says he spent 237.9 hours at a billing rate of $250.00, which results in $59,475.00 in attorney fees. Clearly, given the settlement amount of $35,000.00, there is no way for either counsel to recover all of their fees from the settlement amount, a point both Akhtar and Combs conceded at the hearing.

For the reasons that follow, the Court AWARDS $10,000.00 to Akhtar and $5,000.00 to Combs, leaving Meyer $20,000.00.

II.

On November 2, 2006, Meyer, through Akhtar and co-counsel Mark Porter, filed a complaint against defendants, Macomb County, John Brennan, and John Brogowicz, claiming sexual harassment and retaliation. The parties appeared for a status conference on January 9, 2007. On January 24, 2007, Meyer filed an amended complaint. The case proceeded through discovery. On December 21, 2007, defendants filed a detailed motion for summary judgment. On February 4, 2009, Meyer filed a comprehensive response. Defendants filed a reply and Meyer filed a sur-reply. On May 14, 2008, the Court entered an order granting in part and denying in part defendants' motion for summary judgment. In the Memorandum and Order, the Court granted summary judgment on Meyer's claim of retaliation and denied summary judgment on Meyer's sexual harassment claims under Title VII and under Elliott-Larsen.

On May 28, 2008, Meyer filed a motion for reconsideration on her retaliation claim. While the motion was pending, the Court referred the case to a magistrate judge for a settlement conference. The case did not settle. On June 17, 2008, the Court denied Meyer's motion for reconsideration. At that time, the case was scheduled for

jury trial.

On June 30, 2009, Meyer filed a second motion for reconsideration. On August 5, 2008, the Court denied the motion.

The case was set for jury trial on September 22, 2008.

On August 30, 2008, Akhtar and Porter filed a motion to withdraw, citing a breakdown of the relationship.[2] On September 24, 2008, the Court held a hearing on the motion. On October 1, 2008, the Court entered an order granting the motion. On October 31, 2008, Meyer lodged a statement with the Court stating her intention to proceed pro se and her understanding that the case would be stayed until January 10, 2009. While Meyer was pro se, defendants filed a motion requesting that she execute medical authorizations. Meyer opposed the motion.

On March 27, 2009, Combs entered an appearance as counsel for Meyer. An issue regarding the medical authorizations was later resolved. The Court held a pretrial conference on July 22, 2009 and entered a Joint Final Pretrial Order. Jury trial was set for November 16, 2009. On November 13, 2009, the individual defendants were dismissed by stipulated order.

Thereafter, the parties told the Court that the case had settled.

III.

Both attorneys' request for fees is presumably based on the respective contracts between each of them and Meyer for legal services. Meyer is a Michigan resident, and Akhtar and Combs are attorneys licensed to practice in Michigan. Under Fed. R. Civ. P.

---

[2]In the motion, Akhtar stated that the relationship between Meyer and co-counsel Porter broke down early in the case. It is not clear how much Porter contributed to the case. Porter has not filed a claim for attorney fees.

3

69(a)(1), Michigan law is controlling with respect to a claim of lien. Soto v. Airborne Express, Inc., 2009 WL 3388898 (E.D. Mich. Oct. 16, 2009).

Michigan law creates a "charging lien" of an attorney upon a judgment or fund resulting from the attorney's services. George v. Sandor M. Gelman, P.C., 201 Mich. App. 474, 476 (1993); Aetna Casualty & Surety Co. v. Starkey, 116 Mich. App. 640, 644. The lien "is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." George, 201 Mich. App. at 476.

With respect to Akhtar, an attorney retained on a contingent fee arrangement who withdraws from a case with good cause is entitled to compensation for the reasonable value of his services based on quantum meruit, and not the contingent fee contract. Morris v. Detroit, 189 Mich. App 271, 278 (1991); Ecclestone v. Ogne, 177 Mich. App 74, 76 (1989).

There is no precise formula for assessing the reasonableness of attorney fees; however, several factors were set forth in Crawley v. Schick, 48 Mich. App 728 (1973), to assist in determining a reasonable attorney fee. The nonexclusive factors include: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." Morris, supra at 278-279, quoting Crawley, supra at 737.

IV.

Both attorneys charge $250.00 an hour. This rate is reasonable.[3] As to whether

---

[3] In calculating a reasonable hourly rate, the Court considers "prevailing market rates in the relevant community" of metro-Detroit, Michigan. Blum v. Stenson, 46 U.S. 886, 897 (1984); Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 350 (6th Cir. 2000) (citations

4

the amount of hours is reasonable, Akhtar has attached detailed billing records establishing the amount of attorney hours . A review of the records show that the hours spent (194.70) were appropriate. As noted above, Akhtar litigated the case from the preparation and filing of the complaint, through discovery and summary judgment proceedings, including filing two motions for reconsideration. He obtained a fair degree of success in defeating defendants' motion for summary judgment in part.

Combs says he spent 237.9 hours. While his attached records contain an itemization for the hours spent, the Court does not find the amount of time reasonable under the circumstances. Combs entered the case after summary judgment had been denied. Although Combs spent time preparing the case for trial, the case was settled within months after he entered the case. It is not reasonable for Combs to have incurred more attorney hours than Akhtar. Once he entered an appearance in March of 2009, he worked on the Joint Final Pretrial Order. There are no other substantive filings on the docket from Combs except the response to the instant motion.

Finally, the Court has considered the responses to Akhtar's motion filed by Combs, as counsel for Meyer, and filed by Meyer herself in the form of affidavits. Suffice to say that these papers take issue with the quality of Akhtar's representation.

---

omitted). Federal courts have relied on the State Bar of Michigan 2003 Economics of Law Practice survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice. See Lamar Adver. Co. v. Charter Twp. of Van Buren, 178 F. App'x. 498, 501-02 (6th Cir. 2006). The 2003 State Bar of Michigan survey demonstrates that, during 2003, the average billing rate for attorneys in large firms (over 100 attorneys) and the average rate for attorneys practicing in downtown Detroit was $238 per hour. 2003 Mich. Bar Survey at 25-26. The average hourly rates for attorneys practicing in downtown Detroit are $300.30 for equity partners, $211.64 for associates and $304.59 for litigation defense attorneys. See id.

While the Court understands that Meyer was unhappy with Akhtar's representation,[4] the record shows Akhtar litigated the case ably and spent significant time in doing so. Akhtar's withdrawal was precipitated on a breakdown of the attorney client relationship for which there was cause. As such, he is entitled to compensation for his services.

On the other hand, the fact that Combs was able to achieve a settlement is laudable. However, at the time Combs entered the case, it was ready for trial and it does not appear that he would have to expend significant time on the case. He is, nevertheless, also entitled to compensation.

Considering all of the above, in particular the Crawley factors, and the amount of the settlement, the Court concludes that Akhtar is entitled to $10,000.00 in attorney fees from the settlement amount as reasonable compensation for his services. Combs is entitled to $5,000.00 in attorney fees from the settlement amount as reasonable compensation for his services.

SO ORDERED.

Dated: March 10, 2010
    S/Avern Cohn
    AVERN COHN
    UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 10, 2010, by electronic and/or ordinary mail.

    S/Julie Owens
    Case Manager, (313) 234-5160

---

[4] Meyer filed a grievance against Akhtar. The Attorney Grievance Commission found no evidence of misconduct.